## UNITED STATES v. 1,433 ACRES OF LAND, MORE OR LESS, MONTGOMERY COUNTY, KAN., et al.

### No. 1270.

District Court, D. Kansas, Third Division.

May 29, 1947.

---

Paul L. Aylward, of Ellsworth, Kan., Sp. Atty., Department of Justice, for plaintiff.

Charles C. Clark, and Harold Steinrauf, Attys. for State Highway Commission of Kansas, all of Topeka, Kan., for defendant.

MELLOTT, District Judge.

The State Highway Commission of Kansas has filed a motion for judgment on appraiser's award in the amount of $110,001, together with "interest on the compensation for the land taken at the rate of six percent per annum from the date of taking." The plaintiff concedes that judgment should be entered for the amount claimed but resists the allowance of any interest. The facts are not controverted and may be summarized.

On June 3, 1942 the United States of America[1] took possession of 1,433 acres of land in Montgomery County, Kansas, for the Independence Basic Flying School. The petition filed excluded easements, public roads, highways, public utilities and railroads. An amended petition was filed January 2, 1945, naming the county officers of Montgomery County, the State of Kansas and the State Highway Commission of the State of Kansas.[2] Included within the area originally taken was a mile and a half of U. S. Highway 75, subject to the jurisdiction of the commission, which was actually closed shortly after the filing of the condemnation proceeding in 1942 at the request of the District Engineer of the War Department. The State of Kansas, through its commission, thereupon constructed a five mile detour, temporary in nature,[3] at a cost of $10,434, which, for present purposes it will be assumed, was expended on July 1, 1942. Apparently that is the sole amount which, at this time, has been expended by the commission on roads in that area.

Following the filing of the amended petition appraisers were appointed to determine, pursuant to the court's instructions, "the cost of such reasonable improvements as were necessitated by the taking to make the remaining roads reasonably sufficient for the needs of the travelling public, including the cost of necessary new roads, if any were necessary * * *", the instruction advising the appraisers that their "awards should equal the total of these costs and expenses found * * * to be directly occasioned by this taking." Pursuant to such instructions the appraisers filed their report on September 3, 1946, awarding the sum of $110,001, $1 of said amount being awarded, under stipulation with the Board of County Commissioners (the governing body of the county) to Montgomery County, Kansas, for the taking of roads other than state highways. No appeal was taken from the award. An order for immediate possession of the property described in the amended petition was en-

<hr />

[1] Hereinafter referred to as the government.

[2] The State Highway Commission hereinafter referred to as the commission is a body corporate with powers to sue and be sued. 74-2001, G.S.Kansas 1935.

[3] The temporary nature of the highway seems to have been occasioned by the inability to secure road materials.

tered on the date the petition was filed, viz., January 2, 1945.

No case has been cited or found in which the precise question now presented to the court has been decided and the right answer is somewhat elusive. Well-established principles, however, tend to support the conclusion reached, even though complete rationalization of it is difficult.

 As pointed out by learned counsel for the movant, payment by the government for the taking of roads and highways in condemnation proceedings is required under the Fifth Amendment to the constitution.[4] In some of the cited cases, interest on the judgments—apparently pro forma, or in any event without discussion—has also been awarded.[5] Interest is an element of just compensation; and, when private property is taken, is awarded as a matter of course.[6] The rule ordinarily applied, that market value at the time of taking is just compensation, has no application where the property interest taken is that of a political subdivision in its streets or highways.[7] The test to be applied in determining just compensation is the cost of restoring the property to the same condition after the taking as it was before;[8] but interest upon future expenditures would "[give] the * * * [political subdivision] more than just compensation."[9]

Many of the basic principles are touched upon in the recent case of Jefferson County, etc., v. Tennessee Valley Authority.[8] The question there was whether the obligation of the government to pay just compensation was satisfied by providing, at its cost, adequate substitute road facilities. The court held that just compensation for the taking of roads by the government could not "be measured by the same standards as compensation for the taking of purely private property"; that it "is the cost of restoring the property to the same condition after the taking as it was before"; that it rests "on equitable principles" and means "substantially that the owner should be put in as good position as he would have been if his property had not been taken * * *"; and that since the government had completely restored the highway facilities the county was entitled "to take nothing" in the suit instituted by it.

Other questions and principles are discussed by the parties upon brief—when the "taking" actually occurred, whether interest may be allowed upon an unliquidated claim against the government, whether the sovereign has consented to be subjected to the payment of interest,[10] and whether a distinction should be made between the property interest of a political unit in the public highways, on the one hand, and the interest of an owner of marketable property on the other, even though no distinction is made in the statute[11]—but in the judgment of the court they may be passed.

 The court perceives no reason why it should not accept, as have the parties, the determination of the appraisers that the cost of making the remaining roads reasonably sufficient for the needs of the traveling public, including the cost of necessary new roads, if any, will aggregate $110,001. Judgment will accordingly be entered for that amount. In view of the fact that $10,434 was expended by the commission on July 1, 1942, interest upon that amount at six percent per annum is allowed. Interest upon the remainder of the judgment will not be allowed at this time; but the court retains jurisdiction for the purpose of allowing interest upon so much of the

4 See list of cases cited in United States v. Wheeler Township, 8 Cir., 66 F.2d 977, 982, 983; United States v. Certain Parcels of Land, etc., D.C., 54 F. Supp. 667; United States v. Carmack, 329 U.S. 230, 67 S.Ct. 252; United States v. Town of Nahant, 1 Cir., 153 F. 520, 523.

5 Town of Bedford v. United States, 1 Cir., 23 F.2d 453, 56 A.L.R. 360.

6 Seaboard Air Line Railway Co. et al. v. United States, 261 U.S. 299, 306, 43 S.Ct. 354, 67 L.Ed. 664; Brooks-Scanlon Corporation v. United States, 265 U.S. 106, 123, 44 S.Ct. 471, 68 L.Ed. 934; United States v. Thayer-West Point Hotel Co., 329 U.S. 585, 67 S.Ct. 398.

7 Woodville, Oklahoma, v. United States, 10 Cir., 152 F.2d 735.

8 Jefferson County, etc., v. Tennessee Valley Authority, 6 Cir., 146 F.2d 564, 565.

9 United States v. Town of Nahant, 1 Cir., 153 F. 520, 525.

10 Anglin & Stevenson et al. v. United States, 10 Cir., 160 F.2d 670.

11 40 U.S.C.A. § 258a.

balance as remains unpaid after being expended by the commission for the purpose allowed by the appraisers. Appropriate journal entry of judgment should be prepared by counsel for the government in accordance with the Federal Rules of Civil Procedure, rule 58, 28 U.S. and Rule XXI of the Rules of Practice of this court.